06-3394-cv
Wisniewski v. Bd. of Ed. of Weedsport Central School Dist.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2006

Heard: April 17, 2007                    Decided: July 5, 2007)

Docket No. 06-3394-cv

- - - - - - - - - - - - - - - - - - - - - - - - - -
MARTIN WISNIEWSKI and ANNETTE WISNIEWSKI,
on behalf of their son Aaron Wisniewski,
         Plaintiffs-Appellants,


                v.

BOARD OF EDUCATION OF THE WEEDSPORT CENTRAL
SCHOOL DISTRICT and RICHARD MABBETT,
Superintendent of Schools,
         Defendants-Appellees.
- - - - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, WALKER, and STRAUB, <u>Circuit Judges</u>.

     Appeal from the June 30, 2006, amended judgment of the United States District Court for the Northern District of New York (Norman A. Mordue, Chief Judge), granting summary judgment on federal law claims to school board and school superintendent sued for suspending student for displaying via Internet instant messaging an icon depicting the shooting of a named teacher, and declining to exercise supplemental jurisdiction over state law claims.

     Affirmed.

                    Stephen Ciotoli, Fayetteville, N.Y. (Dennis
                       G. O'Hara, O'Hara, O'Connell & Ciotoli,
                       Fayetteville, N.Y., on the brief), for
                       Plaintiffs-Appellants.

                    Suzanne O. Galbato, Syracuse, N.Y.
                       (Jonathan B. Fellows, Bond, Schoeneck &
                       King, Syracuse, N.Y., on the brief), for
                       Defendants-Appellees.

JON O. NEWMAN, <u>Circuit Judge</u>.

This appeal concerns a First Amendment challenge to an eighth-grade student's suspension for sharing with friends via the Internet a small drawing crudely, but clearly, suggesting that a named teacher should be shot and killed. Plaintiffs-Appellants Martin and Annette Wisniewski, the parents of Aaron Wisniewski, appeal from the June 30, 2006, amended judgment of the District Court for the Northern District of New York (Norman A. Mordue, Chief Judge), dismissing their federal civil rights claims against the Defendants-Appellees Weedsport Central School District Board of Education and School Superintendent Richard Mabbett and declining to exercise supplemental jurisdiction over state law claims. We conclude that the federal claims were properly dismissed because it was reasonably foreseeable that Wisniewski's communication would cause a disruption within the school environment, and that it was appropriate not to exercise supplemental jurisdiction. We therefore affirm.

Background

-2-

Facts of the episode. This case arose out of an Internet transmission by an eighth-grader at Weedsport Middle School, in the Weedsport Central School District in upstate New York. In April 2001, the pupil, Aaron Wisniewski ("Aaron"), was using AOL Instant Messaging ("IM") software on his parents' home computer. Instant messaging enables a person using a computer with Internet access to exchange messages in real time with members of a group (usually called "buddies" in IM lingo) who have the same IM software on their computers. Instant messaging permits rapid exchanges of text between any two members of a "buddy list" who happen to be on-line at the same time. Different IM programs use different notations for indicating which members of a user's "buddy list" are on-line at any one time. Text sent to and from a "buddy" remains on the computer screen during the entire exchange of messages between any two users of the IM program.

The AOL IM program, like many others, permits the sender of IM messages to display on the computer screen an icon, created by the sender, which serves as an identifier of the sender, in addition to the sender's name. The IM icon of the sender and that of the person replying remain on the screen during the exchange of text messages between the two "buddies," and each can copy the icon of the other and transmit it to any other "buddy" during an IM exchange.

-3-

Aaron's IM icon was a small drawing of a pistol firing a bullet at a person's head, above which were dots representing splattered blood.[1] Beneath the drawing appeared the words "Kill Mr. VanderMolen." Philip VanderMolen was Aaron's English teacher at the time. Aaron created the icon a couple of weeks after his class was instructed that threats would not be tolerated by the school, and would be treated as acts of violence. Aaron sent IM messages, displaying the icon to some 15 members of his IM "buddy list." The icon was not sent to VanderMolen or any other school official.

The icon was available for viewing by Aaron's "buddies" for three weeks, at least some of whom were Aaron's classmates at Weedsport Middle School. During that period it came to the attention of another classmate, who informed VanderMolen of Aaron's icon and later supplied him with a copy of the icon. VanderMolen, distressed by this information, forwarded it to the high school and middle school principals, who brought the matter to the attention of the local police, the Superintendent Mabbett, and Aaron's parents. In response to questioning by the school principals, Aaron acknowledged that he had created and sent it and expressed regret. He was then suspended

_____

[1]The Appellants, in something of an understatement, describe Aaron's icon as "distasteful." See Brief for Appellants at 3 n.1.

-4-

for five days, after which he was allowed back in school, pending a superintendent's hearing. VanderMolen asked and was allowed to stop teaching Aaron's class.

At the same time, a police investigator who interviewed Aaron concluded that the icon was meant as a joke, that Aaron fully understood the severity of what he had done, and that Aaron posed no real threat to VanderMolen or to any other school official. A pending criminal case was then closed. Aaron was also evaluated by a psychologist, who also found that Aaron had no violent intent, posed no actual threat, and made the icon as a joke.

The superintendent's hearing. In May 2001 a superintendent's hearing, regarding a proposed long-term suspension of Aaron, was held before a designated hearing officer, attorney Lynda M. VanCoske. Aaron was charged under New York Education Law §3214(3) with endangering the health and welfare of other students and staff at the school.

In her decision of June 2001, VanCoske found that the icon was threatening and should not have been understood as a joke. Although the threatening act took place outside of school, she concluded that it was in violation of school rules and disrupted school operations by requiring special attention from school officials, replacement of the threatened teacher, and interviewing pupils during class time. The

hearing officer acknowledged the opinions of the police investigator and the psychologist that Aaron did not intend to harm VanderMolen and that he did not pose any real threat, but stated that "intent [is] irrelevant." Citing the evidentiary standard followed in New York suspension hearings, the decision concluded:

> Substantial and competent evidence exists that Aaron engaged in the act of sending a threatening message to his buddies, the subject of which was a teacher. He admitted it. Competent and substantial evidence exists that this message disrupted the educational environment. . . .

> As a result of the foregoing, I conclude that Aaron did commit the act of threatening a teacher, in violation of page 11 of the student handbook, creating an environment threatening the health, safety and welfare of others, and his actions created a disruption in the school environment.

The hearing officer recommended suspension of Aaron for one semester. The recommendation was presented to the district's Board of Education ("Board"),[2] which approved the one semester suspension in late September 2001. Aaron was suspended for the first semester of the 2001-2002 school year. During the period of suspension the school district afforded Aaron alternative education. He returned to school for the spring term. At oral argument, we were advised that because

---

[2]Although Superintendent Mabbett was authorized under the statute to decide Aaron's discipline, the issue was brought before the Board due to his prior involvement in the case.

-6-

of school and community hostility, the family moved from Weedsport.

    The District Court litigation.  In November 2002 Aaron's parents filed on his behalf the current suit against the Board and Superintendent Mabbett, seeking damages under 42 U.S.C. § 1983.  The complaint included five counts: the first count claimed that Aaron's icon was not a "true threat," but was protected speech under the First Amendment.  It therefore alleged that in suspending Aaron the Board acted in a retaliatory manner in violation of his First Amendment rights.  The second and third counts alleged that the Board and Mabbett, respectively, had failed to train school staff in threat assessment, thereby leading to the violation of Aaron's First Amendment rights.  The fourth and fifth counts claimed the Board had violated New York State Education Law.

    In June 2006, Chief Judge Mordue granted the Defendants' motion for summary judgment.  The District Court first found that the hearing officer had made a factual determination, entitled to preclusive effect, that the icon was a threat and, as such, not protected by the First Amendment.  Alternatively, the Court made its own determination that the icon was reasonably to be understood as a "true threat" lacking First Amendment protection.  The Court also found that, in any event, Mabbett would be entitled to qualified immunity.  Having dismissed all three federal law claims, the District Court declined to

-7-

exercise supplemental jurisdiction over the remaining two state law claims, and dismissed them without prejudice.

## Discussion

We see no need to resolve the dispute between the parties as to whether the Plaintiffs' claim was barred by collateral estoppel arising from the determinations in the Superintendent's hearing. Instead, we turn directly to the merits of the Plaintiffs' claim that Aaron's icon was protected speech under the First Amendment.

In assessing that claim, we do not pause to resolve the parties' dispute as to whether transmission of the icon constituted a "true 'threat'" within the meaning of the Supreme Court's decision in Watts v. United States, 394 U.S. 705, 708 (1969). Watts concerned a criminal prosecution for violating 18 U.S.C. § 871(a), which provides punishment for "knowingly and willfully . . . mak[ing] [a] threat against the President." The defendant had said at a public rally on the grounds of the Washington Monument, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." Id. at 706. The Court noted that "a statute such as this one, which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind," and added, "What is a threat must be distinguished from what is constitutionally protected speech." Id. at 707 (emphasis added). Ruling that "the statute initially requires the

-8-

Government to prove a true 'threat,'" the Court concluded, "We do not believe that the kind of political hyperbole indulged in by [the defendant] fits within that statutory term." Id. at 708.

Although some courts have assessed a student's statements concerning the killing of a school official or a fellow student against the "true 'threat'" standard of Watts, see, e.g., Doe v. Pulaski County Special School District, 306 F.3d 616, 621-27, 627-32 (8th Cir. 2002) (in banc); Lovell v. Poway Unified School District, 90 F.3d 367, 371-73 (9th Cir. 1996), we think that school officials have significantly broader authority to sanction student speech than the Watts standard allows. With respect to school officials' authority to discipline a student's expression reasonably understood as urging violent conduct, we think the appropriate First Amendment standard is the one set forth by the Supreme Court in Tinker v. Des Moines Independent Community School District, 393 U.S. 503 (1969).

Tinker, it will be recalled, concerned students (two at a high school and one at a junior high school) suspended by school authorities for coming to school wearing black armbands signifying their opposition to the Vietnam War. See id. at 504. Noting that the students' conduct was "a silent, passive expression of opinion," id. at 508, the Court stated, "In order for the State in the person of school officials to justify prohibition of a particular expression of

-9-

opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." Id. at 509. The Court used several formulations to describe student conduct that would merit school discipline: conduct that (1) "would substantially interfere with the work of the school," id., or (2) cause "material and substantial interference with schoolwork or discipline," id. at 511, or (3) "would materially and substantially disrupt the work and discipline of the school," id. at 513, or (4) "might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities," id. at 514. Seeing no evidence of any of such risks, the Court ruled that the students' wearing of the armbands was speech protected against school discipline by the First Amendment. See id. at 511-14. In its most recent consideration of a First Amendment challenge to school discipline in response to a student's allegedly protected speech, the Supreme Court viewed the third formulation as Tinker's holding: "Tinker held that student expression may not be suppressed unless school officials reasonably conclude that it will 'materially and substantially disrupt the work and discipline of the school.'" Morse v. Frederick, No. 06-278, 2007 WL 1804317, at *7 (Sup. Ct. June 25, 2007) (quoting Tinker, 393 U.S. at 513).

-10-

Even if Aaron's transmission of an icon depicting and calling for the killing of his teacher could be viewed as an expression of opinion within the meaning of Tinker, we conclude that it crosses the boundary of protected speech and constitutes student conduct that poses a reasonably foreseeable risk that the icon would come to the attention of school authorities and that it would "materially and substantially disrupt the work and discipline of the school." Id. (internal quotation marks omitted). For such conduct, Tinker affords no protection against school discipline. See LaVine v. Blaine School District, 257 F.3d 981, 989-92 (9th Cir. 2001) (upholding, under Tinker, suspension of high school student based in part on poem describing shooting of students); Boucher v. School Board, 134 F.3d 821, 827-28 (7th Cir. 1998) (upholding, under Tinker, one-year expulsion of high school student for writing article in underground newspaper outlining techniques for hacking into school computers); J.S., a Minor v. Bethlehem Area School District, 757 A.2d 412, 422 (Pa. Cmwlth. 2000) (upholding, under Tinker, permanent expulsion of student for placing on web-site picture of severed head of teacher and soliciting funds for her execution).

The fact that Aaron's creation and transmission of the IM icon occurred away from school property does not necessarily insulate him

from school discipline.[3]  We have recognized that off-campus conduct can create a foreseeable risk of substantial disruption within a school, see Thomas v. Board of Education, 607 F.2d 1043, 1052 n.17 (2d Cir. 1979) ("We can, of course, envision a case in which a group of students incites substantial disruption within the school from some remote locale."), as have other courts, see Pulaski, 306 F.3d at 625-27 (letter, written and kept at home, that threatened killing of fellow student); Sullivan v. Houston Independent School District, 475 F.2d 1071, 1075-77 (5th Cir. 1973) (underground newspaper distributed off-campus but near school grounds); J.S., 757 A.2d at 418-22 (material created on home computer).

In this case, the panel is divided as to whether it must be shown that it was reasonably foreseeable that Aaron's IM icon would reach the school property or whether the undisputed fact that it did reach the school pretermits any inquiry as to this aspect of reasonable

------

[3]Since the Supreme Court in Morse rejected the claim that the student's location, standing across the street from the school at a school approved event with a banner visible to most students, was not "at school," Morse, 2007 WL 1804317, at *5, it had no occasion to consider the circumstances under which school authorities may discipline students for off-campus activities.

-12-

foreseeability. We are in agreement, however, that, on the undisputed facts, it was reasonably foreseeable that the IM icon would come to the attention of school authorities and the teacher whom the icon depicted being shot.[4] The potentially threatening content of the icon

_____

[4]Judge Walker, who otherwise fully concurs in this opinion and in the judgment, would hold that a school may discipline a student for off-campus expression that is likely to cause a disruption on campus only if it was foreseeable to a reasonable adult, cognizant of the perspective of a student, that the expression might reach campus. Cf. Skoros v. City of New York, 437 F.3d 1, 23 (2d Cir. 2006) (discussing perspective of reasonable adult who assesses religious display aware that it will be seen primarily by children). He believes that to hold otherwise would run afoul of Thomas, 607 F.2d at 1045 (holding that "the arm of [school] authority does not [generally] reach beyond the schoolhouse gate"), and would raise substantial First Amendment concerns, as it might permit a school to punish a student for the content of speech the student could never have anticipated reaching the school, such as a draft letter concealed in his night-stand, stolen by another student, and delivered to school authorities, cf. Porter v. Ascension Parish School Board, 393 F.3d 608, 615 n.22 (5th Cir. 2004) ("[T]he fact that Adam's drawing was composed

-13-

and the extensive distribution of it, which encompassed 15 recipients, including some of Aaron's classmates, during a three-week circulation period, made this risk at least foreseeable to a reasonable person, if not inevitable. And there can be no doubt that the icon, once made known to the teacher and other school officials, would foreseeably create a risk of substantial disruption within the school environment.

Whether these aspects of reasonable foreseeability are considered issues of law or issues of fact as to which, on this record, no reasonable jury could disagree, foreseeability of both communication to school authorities, including the teacher, and the risk of substantial disruption is not only reasonable, but clear. These consequences permit school discipline, whether or not Aaron intended his IM icon to be communicated to school authorities or, if communicated, to cause a substantial disruption. As in Morse, the student in the pending case was not disciplined for conduct that was merely "offensive," Morse, 2007 WL 1804317, at *10, or merely in conflict with some view of the school's "educational mission," id. at *18 (Alito, J., with whom Kennedy, J., joins, concurring).

---

off-campus and remained off-campus for two years until it was unintentionally taken to school by his younger brother takes the present case outside the scope of [Tinker].").

Although the Appellants contend that the First Amendment barred the imposition of any discipline, they make no distinct challenge to the extent of the discipline.  Thus, we need not determine whether such a challenge would have to be grounded on the First Amendment itself or the substantive component of the Due Process Clause of the Fourteenth Amendment.  Cf. Graham v. Connor, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").  And we are mindful that "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." Wood v. Strickland, 420 U.S. 308, 326 (1975).  However, in the absence of a properly presented challenge, we do not decide whether the length of the one semester suspension exceeded whatever constitutional limitation might exist.  We rule only that the First Amendment claims against the School Board and the Superintendent were properly dismissed, and that the state law claims were properly left for whatever state court adjudication might be available.  We need not rule on the Superintendent's defense of qualified immunity.

Conclusion

-15-

The judgment of the District Court is affirmed.