JORDAN, Circuit Judge,
concurring, with whom VANASKIE, Circuit Judge, joins.
Our Court today issues en banc decisions in two cases with similar fact patterns. In both the case presently before us and in J.S. v. Blue Mountain School District, 650 F.3d 915 (2011), we are asked whether school administrators can, consistent with the First Amendment, discipline students for speech that occurs off campus.[1] Unlike the fractured decision in J.S., we have reached a united resolution *220 in this case, but there remains an issue of high importance on which we are evidently not agreed and which I note now, lest there be any misperception that it has been resolved by either J.S. or our decision here. The issue is whether the Supreme Court’s decision in Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), can be applicable to off-campus speech. I believe it can, and no ruling coming out today is to the contrary.[2]
In Tinker, the Supreme Court emphasized that student speech, “in class or out of it, which for any reason ... materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech.” Id. at 513, 89 S.Ct. 733. It also suggested that if there are “facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities,” that too can result in disciplinary measures. Id. at 514, 89 S.Ct. 733. Given those statements, the applicability of Tinker here seems straightforward, although it gives no shelter to the defendant school district in this case because, as the opinion for our Court notes, “the [Hermitage School] District does not now challenge the ... finding that [the student’s] conduct did not result in any substantial disruption[,]” Op. at 219, nor did the School District demonstrate that the student’s speech or conduct created a reasonable apprehension of substantial disruption.
Tinker ought likewise to be viewed as providing the governing rule of law in J.S., but that has been thrown into question by the competing opinions that have emerged in en bane review. The Majority opinion in J.S. takes the position that whether Tinker is applicable to off-campus speech is something that can be assumed without being decided since, in the Majority’s view, there was no substantial disruption and hence the school administrators could not lawfully mete out discipline for the despicable speech and behavior detailed in that case. Judge Smith’s concurring opinion in J.S. argues that Tinker does not apply. He appears to conclude that, with the exceptions of speech specifically directed at the school and of speech while at school-sanctioned events, speech that takes place off-campus is beyond the reach of school discipline. See J.S., 650 F.3d at 937-38. The concurrence does acknowledge, however, that whether Tinker applies “cannot turn solely on where the speaker was sitting when the speech was originally uttered[,]” because “[s]uch a standard would fail to accommodate the somewhat ‘everywhere at once’ nature of the internet,]” id. at 940. Judge Fisher then skillfully demonstrates in his dissent in J.S., that the heavy focus in the concurrence on an “off-campus versus on-campus” distinction is artificial and untenable in the world we live in today. See J.S. Dissent, 650 F.3d at 947-48, n. 4. For better or worse, wireless internet access, smart phones, tablet computers, social networking services like Facebook, and stream-of-consciousness communications via Twitter *221 give an omnipresence to speech that makes any effort to trace First Amendment boundaries along the physical boundaries of a school campus a recipe for serious problems in our public schools.
Tinker teaches that schools are not helpless to enforce the reasonable order necessary to accomplish their mission. Again, school officials may curtail speech if they can show “facts which might reasonably have led [them] to forecast substantial disruption of or material interference with school activities.” 393 U.S. at 514, 89 S.Ct. 733. We have similarly stressed that, “if a school can point to a well-founded expectation of disruption ... the restriction may pass constitutional muster.” Saxe v. State College Area Sch. Dist., 240 F.3d 200, 212 (3d Cir.2001). Trying to limit that principle along real property lines is bound to run into trouble, as the J.S. concurrence concedes by saying that there can be difficulty in knowing whether speech has occurred on or off campus. J.S. Concurrence, 650 F.3d at 940. That concession, though, fails to get at the fundamental difficulty in cases like these. The problem is not in knowing where a speaker was when uttering or otherwise creating speech. Like other historical facts, where a speaker said something is a matter that can be decided by typical fact-finding techniques. If the point of the J.S. concurrence is not to question where the speaker was physically so much as to question how to characterize the speech itself, i.e., as having on-campus or off-campus effects, then the definitional exercise only obscures the effort to answer the central dilemma, which is how to balance the need for order in our public schools with respect for free speech. That is the problem Tinker aimed to address and it is the problem we are confronting too, so we should be applying rather than avoiding Tinker.[3]
We cannot sidestep the central tension between good order and expressive rights by leaning on property lines. With the tools of modern technology, a student could, with malice aforethought, engineer egregiously disruptive events and, if the trouble-maker were savvy enough to tweet the organizing communications from his or her cellphone while standing one foot outside school property, the school administrators might succeed in heading off the actual disruption in the building but would be left powerless to discipline the student. Perhaps all of us participating in these en banc decisions would agree on that being problematic. It is, after all, a given that “[t]he most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic.” Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919), and no one supposes that the rule would *222 be different if the man were standing outside the theater, shouting in. Thus it is hard to see how words that may cause pandemonium in a public school would be protected by the First Amendment simply because technology now allows the timing and distribution of a shout to be controlled by someone beyond the campus boundary.
If it is accepted that the First Amendment would not protect such a deliberate disturbance, we should acknowledge that we are weighing competing interests and do so in the straightforward though sometimes challenging way directed by Tinker. Just as society’s interest in public safety surmounts any claim of right to raise a false fire alarm, by the same token any claimed right to spread scurrilous falsehoods about school administrators may well be outweighed by society’s legitimate interest in the orderly administration of public schools. Tinker outlines the approach the Supreme Court has given for undertaking that weighing process.
I worry that the combination of our decisions today in this case and in J.S. may send an “anything goes” signal to students, faculties, and administrators of public schools. To the extent it appears we have undercut the reasoned discretion of administrators to exercise control over the school environment, we will not have served well those affected by the quality of public education, which is to say everyone. By way of some little reassurance, then, it bears emphasis that, whatever else may be drawn from these decisions, we have not declared that Tinker is inapplicable to off-campus speech simply because it occurs off-campus. Despite differing views on what may constitute a substantial disruption, I hope and believe that we are all mindful of the challenges school administrators face in providing a safe environment, conducive to learning and civic development, for children and young adults. Those challenges have never been greater than they are today. Modern communications technology, for all its positive applications, can be a potent tool for distraction and fomenting disruption. Tinker allows school officials to discipline students based on a reasonable forecast of substantial disruption, without waiting for the chaos to actually hit the hallways.
In short, nothing in the First Amendment requires administrators to check their common sense at the school house door. When they must forecast how poisonous accusations lobbed over the internet are likely to play out within the school community, if they “can point to a well-founded expectation of disruption,” Saxe, 240 F.3d at 212, we ought to be supportive of their reasonable efforts to maintain appropriate order. I concur in the Court’s decision in this case, but do not subscribe to any implication that Tinker is inapplicable and that school officials would have been powerless to head off a substantial disruption.[4]

. This case and J.S. are not related cases in the sense of being linked on our docket, but they raise nearly identical First Amendment issues. It is no accident that they were taken en banc at the same time, were argued on the same date, and are being decided simultaneously.

. I readily acknowledge that ”[t]here is some uncertainty at the outer boundaries as to when courts should apply school speech precedents” Morse v. Frederick, 551 U.S. 393, 401, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007), and my conclusion about Tinker's applicability in this case and in J.S. does not account for permutations that may make Tinker inapposite. Whether the test framed by Tinker will always be applicable is not a matter to be answered in the abstract. It is enough for present purposes to observe that it is an analytical approach the Supreme Court has employed for decades and that it is both sensible and salutary to apply it in cases like these.

. The J.S. concurrence cites Morse, as supporting the conclusion that Tinker is inapplicable to off-campus speech, noting that the Morse Court "took care to refute the contention that the plaintiff's speech ... did not occur 'at school' ” which "would have been unnecessary” if Tinker were meant to apply to off-campus speech. J.S. Concurrence, 650 F.3d at 938. That argument mistakes the import of both Morse and Tinker, however. The subject of the speech in Morse, which was an odd reference to illegal drug use, had no relation to the school or school activities. 551 U.S. at 396, 127 S.Ct. 2618. In none of the opinions issued today is it suggested that such speech, if it took place off campus and apart from a school sanctioned event, would be covered by Tinker. Speech that neither relates to school nor occurs on campus or during a school sanctioned event will in all likelihood lack a reasonable nexus to school and so will be divorced from the question of good order in the school, which is the reach of Tinker. Thus, I do not share the concern expressed in the J.S. concurrence that applying Tinker to off-campus speech would "empower schools to regulate students’ expressive activities,” or to "suppress political speech” such as "a blog entry defending gay marriage.” J.S. Concurrence, 650 F.3d at 939.

. I take comfort from certain caveats in the opinion. While putting distance between our Court and the decisions of the United States Court of Appeals for the Second Circuit in Wisniewski v. Board of Educ. of Weedsport Cent. School Dist., 494 F.3d 34 (2d Cir.2007), and Doninger v. Niehoff, 527 F.3d 41 (2d Cir.2008), the opinion for the Court in this case nonetheless acknowledges that those Second Circuit precedents "stand for ... the unremarkable proposition that schools may punish expressive conduct that occurs outside of school...Op. at 219. It is noteworthy too that the Majority opinion in J.S. distinguishes the character of the student speech at issue in the Second Circuit cases from the *223 speech in J.S. but it does not make any distinction based on the location of the speaker. In any event, I agree with the Second Circuit’s ultimate conclusion in Wisniewski that Tinker can have applicability to student speech that occurs off-campus. See Wisniewski, 494 F.3d at 38 (Ruling on internet speech communicated by a student from a home computer, and holding, "[w]ith respect to school officials’ authority to discipline a student's expression reasonably understood as urging violent conduct, we think the appropriate First Amendment standard is the one set forth by the Supreme Court in Tinker.”)