[953 NYS2d 326]

In the Matter of MOHAMED SAAD-EL-DIN et al., Individually and as Parents and Guardians of STUDENT WITH A DISABILITY R., an Infant, et al., Petitioners, v DAVID M. STEINER, as Commissioner of Education, et al., Respondents.

Third Department, October 25, 2012

74

APPEARANCES OF COUNSEL

*Patrick Kevin Brosnahan Jr.*, Babylon, for petitioners.

*Eric T. Schneiderman, Attorney General*, Albany (*Kate H. Nepveu* of counsel), for David M. Steiner, respondent.

*Frazer & Feldmand, LLP*, Garden City (*Joseph Lilly* of counsel), for Board of Education of Half Hollow Hills Central School District of Huntington and another, respondents.

**OPINION OF THE COURT**

PETERS, P.J.

This proceeding arises from an incident on March 17, 2009 in

the student center[1] of Half Hollow Hills High School East in the Town of Huntington, Suffolk County, during which petitioner student R., a then-ninth grade student at the high school, stated to some fellow students and a teacher that he was "going to just blow this place up" and warned them "[d]on't come to school on Friday." The teacher, who had just recently been assigned to the student center as part of her hall duty assignment, thereafter reported student R.'s statements to the assistant principal, stating in her email that, although she did not believe the statements to be a direct threat towards her, she did not know student R. well and "do[es] not know how serious he was" or if there was any validity to his threats. The assistant principal ordered student R. to his office and also informed the principal of student R.'s statements. Each discussed student R.'s statements with him and, unsure whether he had an intention of carrying out the threats, the principal directed the assistant principal to contact student R.'s father, petitioner Mohamed Saad-El-Din, as well as the police.

Student R. was immediately suspended from the high school for five days (see Education Law § 3214 [3] [b] [1]) and charged, pursuant to Education Law § 3214 (3) (c), with having engaged in conduct that is (1) insubordinate, disorderly, violent, disruptive and/or a danger to the safety, morals, health, or welfare of himself and/or others, and/or (2) a violation of the high school's code of conduct. A hearing was held, after which the Hearing Officer found student R. guilty of the charge[2] and recommended that he be suspended for an additional 25 days. The District Superintendent adopted the Hearing Officer's recommendation, and respondent Board of Education of Half Hollow Hills High School District of Huntington and Babylon Half Hollow Hills Central School District (hereinafter the Board) affirmed that determination. Petitioners appealed the Board's determination to respondent Commissioner of Education, who sustained the determination and dismissed the appeal.

As a result, petitioners commenced the instant CPLR article 78 proceeding seeking, among other things, to vacate the Commissioner's dismissal of their appeal and to have student R.'s suspension expunged. Supreme Court, upon concluding that the

1. The student center is a room where students can go during free periods.

2. Prior to the penalty phase of the hearing, a manifestation team of the Half Hollow Committee on Special Education held a manifestation hearing to determine if there was a direct or substantial connection between the charged behavior and student R.'s disability, and determined that there was none (see 8 NYCRR 201.4; see also Education Law § 4402 [1] [b] [3] [j]).

challenge to the Commissioner's determination raised a question of substantial evidence, transferred the proceeding to this Court pursuant to CPLR 7804 (g).

Our review of a determination of the Commissioner in this context is quite limited. As petitioners chose to appeal the Board's determination to the Commissioner rather than directly to the courts in the first instance, they cannot now obtain substantial evidence review of the Board's determination (*see Matter of Gundrum v Ambach*, 55 NY2d 872, 873 [1982]; *Matter of Strongin v Nyquist*, 44 NY2d 943, 945 [1978], *appeal dismissed and cert denied* 440 US 901 [1979]). Rather, we simply assess whether the Commissioner's determination "was arbitrary and capricious, lacked a rational basis or was affected by an error of law" (*Matter of Board of Educ. of Monticello Cent. School Dist. v Commissioner of Educ.*, 91 NY2d 133, 139 [1997]; *see Matter of Conley v Ambach*, 61 NY2d 685, 687 [1984]; *Matter of Forte v Mills*, 250 AD2d 882, 883 [1998]).³

■ Petitioners contend that the decision to suspend student R. for making the statements at issue, absent evidence of or a determination that he actually intended to carry out the threat, was arbitrary and capricious and violated his First Amendment right to freedom of speech. We cannot agree. It is axiomatic that public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate" (*Tinker v Des Moines Independent Community School Dist.*, 393 US 503, 506 [1969]). It is equally true, however, that "the First Amendment rights of students in the public schools are not automatically coextensive with the rights of adults in other settings, and must be applied in light of the special characteristics of the school environment" (*Hazelwood School Dist. v Kuhlmeier*, 484 US 260, 266 [1988] [internal quotation marks and citation omitted]; *accord Morse v Frederick*, 551 US 393, 396-397 [2007]). The relevant inquiry focuses on whether the student's conduct "might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities" (*Tinker v Des Moines Independent Community School Dist.*, 393 US at 514; *see Hazelwood School Dist.*

---

3. As the appropriate standard of review is not whether the determination is supported by substantial evidence, transfer of the proceeding to this Court was improper. Nevertheless, we will retain jurisdiction and address the merits in the interest of judicial economy (*see Matter of Mudge v Huxley*, 79 AD3d 1395, 1396 [2010]; *Matter of Donlon v Mills*, 260 AD2d 971, 972 [1999], *lv denied* 94 NY2d 752 [1999]).

*v Kuhlmeier*, 484 US at 266; *Matter of Board of Educ. of Monticello Cent. School Dist. v Commissioner of Educ.*, 91 NY2d at 140). School administrators need not prove either actual or inevitable disruption. "Rather, the question is 'whether school officials might reasonably portend disruption from the student [speech] at issue' " (*Cuff ex rel. B.C. v Valley Cent. Sch. Dist.*, 677 F3d 109, 113 [2d Cir 2012], quoting *Doninger v Niehoff*, 527 F3d 41, 51 [2d Cir 2008] [internal quotation marks omitted]).

Here, it is uncontested that student R. stated that he was going to "blow the school up" to some of his fellow students and a teacher, and then soon thereafter recommended that they "[d]on't come to school on Friday." These statements were made on school property and while school was in session. Although none of those witnesses testified that they understood student R.'s words to mean that he intended to engage in the expressed violent conduct, it was nevertheless reasonably foreseeable that such a threat to blow up the school would create a substantial disruption within the school. Indeed, both the principal and assistant principal immediately investigated the incident and testified that, after speaking with student R. regarding his statements, they were unsure whether the threat was serious or only a joke, with the assistant principal also disclosing that he was "personally in fear." The statement also prompted school officials to summon police, who conducted interviews as well as their own investigation. Whether student R. uttered the statements as a joke or never intended to carry out the threat is irrelevant (*see Cuff ex rel. B.C. v Valley Cent. Sch. Dist.*, 677 F3d at 114; *Wisniewski v Board of Educ. of Weedsport Cent. Sch. Dist.*, 494 F3d 34, 40 [2d Cir 2007], *cert denied* 552 US 1296 [2008]; *see generally Tinker v Des Moines Independent Community School Dist.*, 393 US at 509).

The threat of substantial disruption was compounded by the fact that student R.'s statements were made to fellow students and, indeed, could have well become known to other students or their parents. As aptly explained by the Second Circuit in a recent case in which a student was suspended following completion of a school assignment drawing depicting an astronaut and a purportedly whimsical desire to blow up the school:

> "School administrators might reasonably fear that, if permitted, other students might well be tempted to copy, or escalate, [the student's] conduct. This might then have led to a substantial decrease in dis-

cipline, an increase in behavior distracting students and teachers from the educational mission, and tendencies to violent acts. Such a chain of events would be difficult to control . . . . School administrators also have to be concerned about the confidence of parents in a school system's ability to shield their children from frightening behavior and to provide for the safety of their children while in school" (*Cuff ex rel. B.C. v Valley Cent. Sch. Dist.*, 677 F3d at 114-115).

Under these circumstances, we conclude that school officials could have reasonably concluded that student R.'s statements would substantially disrupt the school environment, and their resulting decision to suspend him was not violative of his constitutional right to free speech (*see id.* at 113-115; *Matter of Board of Educ. of Monticello Cent. School Dist. v Commissioner of Educ.*, 235 AD2d 734, 736 [1997], *affd* 91 NY2d 133 [1997]).

■ Nor was the Commissioner's decision to uphold student R.'s suspension arbitrary and capricious. Education Law § 3214 (3) (a) permits the suspension of a student "who is insubordinate or disorderly or violent or disruptive, or whose conduct otherwise endangers the safety, morals, health or welfare of others." This includes, consistent with First Amendment principles, the suspension of a student "who is substantially disruptive of the educational process" (Education Law § 3214 [2-a] [b]). Here, the school's student handbook warned students that, in accordance with its policy of zero tolerance for violence, "[a]ll threatening statements will be taken seriously" and students will be disciplined accordingly. In fact, the high school's code of conduct specifically provides that the "false reporting of bomb threats" is prohibited and will result in suspension. Given the uncontested proof that student R. made the threatening statements at issue and the disruption within the school which reasonably resulted from his utterance of those statements, we find no basis upon which to disturb the Commissioner's determination (*see Matter of Board of Educ. of Monticello Cent. School Dist. v Commissioner of Educ.*, 235 AD2d at 735).

LAHTINEN, KAVANAGH, STEIN and EGAN JR., JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.