EDWARD C. PRADO, Circuit Judge,
dissenting:
I agree with Judge Dennis’s dissent that Bell’s rap song constitutes expressive speech protected by the First Amendment and that the school’s discipline for that speech violated the First Amendment under existing Supreme Court precedent. I therefore respectfully dissent and join Judge Dennis’s dissent in part.[1]
I write separately because off-campus online student speech is a poor fitvfor the current strictures of First Amendment doctrine, which developed from restrictions on other media, and I hope that the Supreme Court will soon give courts the necessary guidance to resolve these difficult cases. See David L. Hudson, Jr., The First Amendment: Freedom of Speech § 7:6 (2012) (“[T]he next frontier in student speech that the U.S. Supreme Court ■will explore is online speech.”). This issue has divided the circuits and state supreme courts. Some have concluded that the Tinker standard categorically does not apply to online off-campus speech. See J.S. ex rel. Snyder v. Blue Mountain Sch. Disk, 650 F.3d 915, -937 (3d Cir.2011) (en banc) (Smith, J., concurring) (noting that “[ljower courts ... are divided on whether Tinker’s substantial-disruption test governs students’ off-campus expression”); see also Thomas v. Bd. of Ed., Granville Cent. Sch. Disk, 607 F.2d 1043, 1053 n. 18 (2d Cir.1979) (“[W]e believe that [the] power [to regulate expression] is denied to public school officials when they seek to punish off-campus expression simply because they reasonably foresee that in-school distribution may result.”). Some courts have assumed without deciding that Tinker applies. See,. e.g., J.S., 650 F.3d at 928-31 (majority op.). And some courts have held that Tinker applies to online off-campus speech if “it was foreseeable ... [that the] conduct would reach the school via computers, smartphones, and other electronic devices,” Kowalski v. Berkeley Cnty. Schs., 652 F.3d 565, 574 (4th Cir.2011), or if there is a “sufficient nexus between the website and the school campus to consider the speech as occurring on campus,” J.S. v. Bethlehem Area Sch. Disk, 569 Pa. 638, 807 A.2d 847, 865 (2002). I am unaware of a circuit or state supreme court going as far as the majority in this case and holding that threatening, harassing, or intimidating online speech that occurred purely off campus may be prohibited or punished. The majority’s holding *434 appears to depart from the other, already divided circuits in yet another direction.
Bell’s speech does not fit within the currently established, narrow categories of unprotected speech, and I would wait for the Supreme Court to act before exempting a new category of speech from First Amendment protection. As we previously stated in Porter v. Ascension Parish School Board, the Tinker standard only applies to substantially disruptive “student speech on the school premises.” 393 F.3d 608, 615 (5th Cir.2004) (emphasis added) (internal quotation marks omitted); see also id. at 615 n. 22 (criticizing other courts for “[r]efusing to differentiate between student speech taking place on-campus and speech taking place off-campus”). Schools officials may also punish speech that advocates illegal drug use and that takes place at off-campus school-sanctioned activities during school hours. Morse v. Frederick, 551 U.S. 393, 400-01, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007) (citing Porter, 393 F.3d at 615 n. 22); see also id. at 425, 127 S.Ct. 2618 (Alito, J., concurring) (reasoning that the location of the speech matters and that, “due to the special features of the school environment, school officials must have greater authority to intervene before speech leads to violence”). But this exception does not apply to purely off-campus speech. See id. at 405, 393 F.3d 608 (majority op.) (“Had Fraser delivered the same speech in a public forum outside the school context, it would have been protected.”).
Moreover, Bell’s speech does not fall within the First Amendment exception we have previously recognized for student speech that threatens “violence bearing the stamp of a well-known pattern of recent historic activity: mass, systematic school-shootings in the style that has become painfully familiar in the United States.” Ponce v. Socorro Indep. Sch. Disk, 508 F.3d 765, 770-71 (5th Cir.2007) (emphasis added). Indeed, in Ponce, we emphasized the narrow scope of this exception, concluding that this exception does not include “threats of violence to individual teachers[, which should be] analyzed under Tinker” or not at all, id. at 771 n. 2 (emphasis added), meaning that threatening language about an individual teacher is not within the Morse exception and may be punished only if it is either “on school premises” within the meaning of Tinker, Porter, 393 F.3d at 615, or if it constitutes a true threat. We reasoned: “Such threats [to teachers], because they are relatively discrete in scope and directed at adults, do not amount to the heightened level of harm that was the focus of both the majority opinion and Justice Ali-to’s concurring opinion in Morse.” Ponce, 508 F.3d at 771 n. 2 (citing Boim v. Fulton Cnty. Sch. Disk, 494 F.3d 978 (11th Cir.2007); Wisniewski v. Bd. of Educ. of the Weedsport Cent. Sch. Disk, 494 F.3d 34 (2d Cir.2007)). “The harm of a mass school shooting is, by contrast, so devastating and so particular to schools that Morse analysis is appropriate.” Id. (emphasis added).
In this case, Bell’s rap song was performed and broadcasted entirely off-campus, and the song described violence directed at individual teachers — not a Columbine-type mass school shooting. Therefore, Bell’s rap does not fall within the Tinker or the Morse categories of unprotected speech under our Circuit’s decisions in Porter and Ponce. Further, in the context of expressive rap music protesting the sexual misconduct of faculty members, no reasonable juror - could conclude that Bell’s rap lyrics constituted a “true • threat.” See Virginia v. Black, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (“ ‘Trae threats’ encompass [only] those statements where the speaker means to *435 communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.”). Therefore, I would reverse the district court and render judgment for Bell.
I therefore agree with Judge Dennis’s dissent that our Circuit should hesitate before carving out a new category of unprotected speech.
Even so, I share the majority opinion’s concern about the potentially harmful impact of off-campus online speech on the on-campus lives of students. The ever-increasing encroachment of off-campus online and social-media speech into the campus, classroom, and lives of school students cannot be overstated. See Kowalski, 652 F.3d at 567-69, 571 (confronting a situation in which one high-school student created a webpage dedicated to spreading rumors about the sexually transmitted disease of another student and her supposed sexual promiscuity, thereby “singling] out [that student] for harassment, bullying and intimidation”). Ultimately, the difficult issues of off-campus online speech -will need to be addressed by the Supreme Court.
For the foregoing reasons, I respectfully dissent.

. I do not join Part I of Judge Dennis's dissent. Unlike the dissent, I would conclude that speech is presumptively protected by the First Amendment unless it fits within a specific category of unprotected speech-regardless of the subject matter of the speech. Thus, I would not extend the doctrinal distinction between private speech and speech on a matter of public concern from the torts and public-employment contexts into the student-speech context.
I also do not join Part 11(B) of the dissent. I agree with the dissent's larger point that the majority opinion’s standard is vague and will prove difficult to apply; however, I am not as sure as the dissent that the Supreme Court's 1997 decision in Reno v. American Civil Liberties Union, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), remains indicative of how the Court would resolve this case today. The Internet has changed dramatically since 1997, so much so that I wonder whether the Court’s views on online student speech have evolved to take into account the potential for harm that simply did not exist to the same degree when Reno was decided eighteen years ago. See, e.g., J.S. v. Bethlehem Area Sch. Dist., 569 Pa. 638, 807 A.2d 847, 863 (2002) (observing that "the advent of the Internet has complicated analysis of restrictions on speech”).